IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK STEVENS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 09-3930 |
| | : | |
| JEFFREY A. BEARD, et al. | : | |
| Secretary of the Pennsylvania Department | : | |
| of Corrections | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                       **January 5, 2012**

      Derrick Stevens filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 alleging he was denied the appointment of new counsel and effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. In a Report and Recommendation (Report) issued November 30, 2010, United States Magistrate Judge David Strawbridge recommended this Court affirm Stevens's conviction and sentence. Stevens raises eight objections to the Report, seven of which essentially repeat verbatim issues presented to the Magistrate Judge in the petition. Because Stevens has failed to show a violation of clearly established law or manifest injustice, this Court overrules his objections and adopts the Report.

**FACTS**

      On March 14, 1997, two masked gunmen entered Squire's Pharmacy in South Philadelphia with the intention of robbing the small drugstore. During the course of the robbery, the 16-year-old stock boy, Christopher Brinkman, was shot and killed. The gunmen escaped on foot with $60 from the cash register. Albert Thomas turned himself into the police a few days later upon hearing he was wanted for questioning, and identified Stevens as the second gunman. The following day, Stevens surrendered to the police and was charged with murder, robbery, aggravated assault, and criminal conspiracy.

Thomas and Stevens were tried together during a ten-day trial in state court beginning on February 11, 1998. Several police and eye witnesses testified at trial to the events during and following the robbery. For example, Margie Combs, who was driving by Squire's Pharmacy immediately following the incident, identified Thomas and Stevens as the masked gunmen. Thomas "Bunky" Broaster, a friend of Stevens, testified about an argument between Thomas and Stevens concerning a robbery, and also testified that he threw Stevens's gun into the Schuylkill River at Stevens's request. Stevens also took the stand in his own defense and claimed he was visiting friends in the nearby Tasker Public Housing Project during the time of the robbery.

On March 6, 1998, Stevens was found guilty of first degree murder, two counts of robbery, aggravated assault, and criminal conspiracy. Stevens received a life sentence for the murder charge, and concurrent sentences of 10 to 20 years for the remaining charges. The Pennsylvania Superior Court affirmed his conviction, and the Pennsylvania Supreme Court denied allocator.

On November 10, 2004, Stevens filed a pro se petition for collateral relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S. Ann. § 9541 *et seq*. The PCRA court denied Stevens's petition, and the Superior Court affirmed. On May 14, 2009, the Pennsylvania Supreme Court denied discretionary review. Stevens filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 28, 2009, raising ineffective assistance of counsel claims. Magistrate Judge Strawbridge reviewed the petition and issued a Report recommending Stevens's conviction be upheld. Stevens raises eight objections to the Report.

**DISCUSSION**

A district court reviews specific and timely objections raised by a party to a Magistrate Judge's Report *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) ("The district judge must

2

determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). *De novo* review is not required, however, when a party's objections merely rehash the claims raised before the magistrate judge. *Morgan v. Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (holding arguments previously presented to a magistrate judge for consideration are not entitled to *de novo* review (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984))). This stems from a desire to promote judicial efficiency because duplicative review would weaken the effectiveness the magistrate system contributes to the judicial process. *Goney*, 749 F.2d at 6. Seven of the eight objections raised by Stevens are duplicative of the claims presented to Magistrate Judge Strawbridge. Nevertheless, out of an abundance of extreme caution, this Court will briefly address each of the petitioner's objections.

A writ of habeas corpus may be granted only if a petitioner can show the adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The "clearly established Federal law" limitation requires a federal habeas court to "deny relief that is contingent upon a rule of law not clearly established [by the United States Supreme Court] at the time the state conviction became final." *Williams v. Taylor*, 529 U.S. 362, 380 (2000). With regard to the "contrary to, or unreasonable application of," requirement, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id*. at 389; *see also Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000) (same). Analysis under this requirement focuses on whether the State's application of

Supreme Court precedent was "objectionably unreasonable." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citation omitted). This strong deference to the state court's application of federal law "creates a substantially higher threshold for obtaining relief under *de novo* review." *Id.* (citation omitted).

Prior to filing an application for a writ of habeas corpus, a petitioner must exhaust all available state remedies. 28 U.S.C. § 2254(b)(1)(A). The petitioner is thus required to "fairly present" the federal claim to the state court to provide the state with "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotations omitted). Where a petitioner has "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause for a procedural default, a prisoner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 486, 488 (1986) (citing *Engle v. Isaac*, 456 U.S. 107 (1982), for proposition that counsel's failure to raise a factual or legal claim is insufficient to meet the "cause for default" requirement).

When analyzing a habeas petition, a federal court should defer to a state court's interpretation of state law. *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (citation omitted)); *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) ("[F]ederal habeas relief does not lie for errors of

state law." (citation omitted)).  Indeed, a federal court does not have the power to reverse a conviction based on wrongly interpreted state law. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Rather, the appropriate analysis for the federal court is "whether the [interpretation of the state law] by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (holding a wrongly applied state jury instruction was not reversible by the federal court under habeas corpus review (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))); *see also Swarthout*, 131 S. Ct. at 861 (holding deprivation of a state-created liberty interest must comport with the Due Process Clause which requires "fair procedures for its vindication").  Absent a violation of "the Constitution or laws or treaties of the United States," a state court's interpretation of state law is not reviewable by a federal court under a habeas corpus review. *Corcoran*, 131 S. Ct. at 16; *see also* 28 U.S.C. § 2254(a).

      The Court turns now to the objections raised by Stevens.  First, Stevens argues the trial court violated his Sixth and Fourteenth Amendment rights by failing to conduct a hearing on his pre-trial motion for the appointment of new counsel and by not granting the motion.  Pet'r's Objections to Report and Recommendation § III.A (Pet'r's Objections).  Stevens raised this claim before Magistrate Judge Strawbridge, and this Court agrees his finding that the claim was procedurally defaulted.  Report at 8.  Stevens failed to present this claim to the Pennsylvania Supreme Court, thereby denying the court an opportunity to review the trial court's decision.  When a petitioner has not "fairly presented" or exhausted a claim in state court, habeas relief is granted only upon a showing of "cause for the default and actual prejudice" or "a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  Because Stevens fails to show either, this claim is barred from federal habeas corpus review, and his objection is therefore overruled.

Stevens's remaining seven objections all allege ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984), and require two components for reversal of conviction. "First, the defendant must show that counsel's performance was deficient," so as to violate the defendant's Sixth Amendment right to counsel. *Id.* An attorney's performance is measured against "prevailing professional norms." *Id.* at 687-88. The court's analysis is deferential towards counsel, with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, "the defendant must show that the deficient performance prejudiced the defense," thereby depriving the defendant of a fair and reliable trial. *Id.* at 685-86. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Stevens's second objection, which also merely reiterates a claim presented to Magistrate Judge Strawbridge, asserts counsel was ineffective for failing to request a limiting instruction to prohibit the jury from considering a statement by Thomas (Stevens's co-defendant) as implicating Stevens. Pet'r's Objections § III.B. The statement at issue was read at trial by the officer who questioned Thomas after he turned himself in, and was redacted to replace Stevens's name with the phrase, "the other person." Trial Tr. at 54-60 (Mar. 2, 1998).[1] Although the Magistrate Judge found

---

[1] The prosecution introduced the redacted statement through the testimony of Detective Watkins. Detective Watkins read the statement in open court as follows:
    Q:    Who was the other male with you at the robbery of the squire drugstore?
    A:    The other person . . .
    Q:    What was the other person wearing?
    A:    A mask and a skully. . .
    Q:    Who went into the drugstore first?
    A:    The other person . . .
    Q:    Did the other person have a gun?

Stevens's counsel unreasonably failed to request a limiting instruction to the effect that the jury should consider the statement only against Thomas and not against Stevens, he determined this failure did not prejudice Stevens due to the overwhelming evidence introduced by the prosecution. Report at 23-24. "[W]hen a redaction is utilized to avoid a violation of the Confrontation Clause there must be a limiting instruction to the jury." *Greene v. Palakovich*, 606 F.3d 85, 106 (3d Cir. 2010) (citing *Bruton v. United States*, 391 U.S. 123 (1968) and *Richardson v. Marsh*, 481 U.S. 200 (1987)). Here, a redacted statement was read at trial. The omission of a limiting instruction violated *Greene* because Stevens was denied the opportunity to confront Thomas, whose redacted statement was used against Stevens.[2] Because Stevens's counsel failed to request a limiting instruction, he acted unreasonably in violation of clearly established law. Nevertheless, Stevens cannot show actual prejudice as a result of his counsel's failure to request such an instruction in light of the overwhelming evidence introduced by the prosecution implicating Stevens.[3] Consequently, this objection is overruled.

In his third objection, Stevens claims his counsel's failure to object to Thomas's counsel's

---

     A:    Yes.
Trial Tr. at 55-57 (Mar. 2, 1998).

[2] As noted in the Report, although *Greene* was decided long after the Superior Court denied Stevens collateral relief, *Greene* only interprets the test announced in *Bruton* and *Marsh* which were available to the state court prior to its denial of Stevens's PCRA petition.

[3] The evidence included multiple witnesses to the crime and surrounding events, including Margie Combs, who saw the two masked men leave the pharmacy and later saw the men unmasked at a dumpster; Thomas Broaster, who threw Stevens's gun into the river; Denise Jones, whose home the men used to change their clothes; and Lakeisha Jones, who disposed of the mens' clothes in a dumpster. The evidence also included the descriptions of the masked men provided by the pharmacy employees who were working at the time of the robbery.

cross-examination of him regarding his post-arrest silence violated his constitutional rights. Pet'r's Objections § III.C.[4] "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 468 (1966) (referring to the prosecution highlighting a defendant's post-arrest silence). "A remark is directed to a defendant's silence when the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on" the defendant's guilt. *United States v. Brennan*, 326 F.3d 176, 187 (3d Cir. 2003) (internal quotations omitted). The same prejudicial effect can be said to occur when either the prosecution or the co-defendant's counsel questions a defendant's post-arrest silence. *See U. S. ex rel. McLaughlin v. Pinto*, 329 F. Supp. 589, 592 (3d Cir. 1971) ("[I]n this Circuit the protection of the Fifth Amendment does apply under certain circumstances to comments by counsel for a co-defendant as well as to a prosecutor's comments."); *see also De Luna v. United States*, 308 F.2d 140, 152 (5th Cir. 1962) ("If comment on an accused's silence is improper for judge and prosecutor, it is because of the effect on the jury, not just because the comment comes from representatives of the State.").

Both the Superior Court and the Magistrate Judge found this claim has "arguable merit." *Commonwealth v. Stevens*, No. 1369 EDA 2007, at 14 (Pa. Super. Ct. Nov. 7, 2008) (hereinafter Super. Ct. Op.); Report at 24. In light of the prosecution's overwhelming evidence implicating Stevens and the incredibility of his alibi,[5] however, Stevens is unable to meet the *Strickland* test in

---

[4] During trial, Stevens testified in his own defense against the emphatic advice of his counsel, claiming he was on Pierce Drive in the Tasker Project during the time of the robbery and, therefore, did not rob the pharmacy. Thomas's counsel, on cross-examination, asked Stevens whether he told the police his alibi at the time of his surrender. Stevens responded he had not.

[5] During his testimony, Stevens only made general comments about his whereabouts within the Tasker Project, unable to clearly articulate if he was inside or outside, and gave only nicknames of

that he cannot show the deficient performance prejudiced his defense.  Stevens's testimony on direct gave the jury ample reason to discredit his alibi even prior to the cross-examination by Thomas's counsel.  Because any prejudice from Thomas's counsel's questioning is outweighed by the other evidence and testimony, Stevens's objection on this ground is also overruled.

  Stevens's fourth objection is similar to his third objection in that he claims his counsel was ineffective for not objecting to Thomas's counsel's questioning regarding Stevens's failure to produce supporting witnesses.  Pet'r's Objections § III.D.  Testifying in his own defense, Stevens claimed Thomas and Diaz ran up to Stevens while he was visiting with friends on Pierce Drive, and Diaz gave Stevens his gun.  According to Stevens, Diaz was the second gunman involved in the drugstore robbery.  Stevens was unable to provide information pertaining to Diaz's whereabouts or his real name, however, and Stevens did not call Diaz to testify at trial.  It is a "fair argument" for counsel to draw attention to a defendant's lack of witnesses supplied to corroborate an alibi defense. *United States v. McClain*, 469 F.2d 68, 70 (3d Cir. 1972); *see also United States v. Keller*, 512 F.2d 182, 186 (3d Cir. 1975) ("It is perfectly proper to comment on the failure of the defense to call a potentially helpful witness . . . .").  Accordingly, the questioning by Thomas's counsel which drew attention to Stevens's lack of alibi witnesses did not violate Stevens's constitutional rights, and Stevens's counsel's failure to object to this questioning was therefore neither unreasonable nor prejudicial.  This objection is overruled.

---

the friends he was visiting. Additionally, Stevens admitted to running from the police, with Thomas, to Denise Jones's home after another man named "Diaz" gave Stevens a gun and "ran off" following the robbery.  Stevens testified he took the gun and ran because he "tried to be a friend."  Trial Tr. at 40 (Mar. 3, 1998).  Stevens admitted to changing his clothes at Jones's home before leaving for Broaster's, and described meeting up with Broaster and then running into Diaz again who asked where Stevens left the gun.  Stevens admitted he returned to Jones's house to retrieve the gun.  Stevens was never able to articulate why he continued to run from the police following the robbery.

Fifth, Stevens argues his counsel was ineffective because he failed to object to the introduction of Steven's .22 caliber long rifle into evidence. Pet'r's Objections § III.E.[6] Assuming Stevens exhausted this claim in state court, Stevens is nevertheless unable to meet the *Strickland* test; therefore, this objection is overruled as well.

Admission of evidence during a trial is at the discretion of the trial court and is reversed only upon a showing of abuse of discretion. *Commonwealth v. Broaster*, 863 A.2d 588, 591 (Pa. Super. Ct. 2004) (citing *Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002)). A weapon may be admitted into evidence, even if it is not the murder weapon, if it shows the defendant possessed a similar weapon to the one used in the crime. *Commonwealth v. Williams*, 640 A.2d 1251, 1260 (Pa. 1994). Here, Christopher Brinkman was shot and killed by a bullet fired from a .22 caliber handgun. Trial Tr. 79-80 (Feb. 27, 1998). The prosecution introduced a ".22 caliber Remington rifle with sawed-off stock" which was recovered from Stevens's home. *Id*. This weapon was relevant because it was similar to the alleged murder weapon, and used similar ammunition, and thus showed Stevens's familiarity with the type of weapon and ammunition used in the crime. Therefore, Stevens's counsel was not unreasonable for failing to object to the introduction of the rifle. This Court agrees with Judge Strawbridge's Report on this claim and overrules this objection.

---

[6] This claim appears to be procedurally defaulted. The Pennsylvania Superior Court did not address the claim, finding Stevens "abandoned [this] claim" in his amended PCRA petition. Super. Ct. Op. at 3. Magistrate Judge Strawbridge found Stevens exhausted this claim in state court because Stevens raised it in his brief. Report at 29. While Stevens did mention this claim in his brief to the Pennsylvania Superior Court, he did not develop or support it with legal argument. *See* Br. of Pet'r-Appellant, *Commonwealth v. Stevens*, 2007 WL 5186091, at *4. As a result, Stevens failed to "fairly present" this claim, and this Court finds the objection to be procedurally defaulted. *See Corredor v. Coleman*, 2010 WL 391413, at *3 (E.D. Pa. Jan. 26, 2010) ("The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition." (internal citations omitted)).

In his sixth objection, Stevens claims his counsel was ineffective for failing to request an alibi instruction. Pet'r's Objections § III.F.[7] Again, assuming this claim has been exhausted and is therefore appropriate for review, this objection is also overruled as Stevens is again unable to meet the *Strickland* test.

"An alibi instruction is required only in cases where a defendant's explanation places him at the relevant time at a different place than the scene involved and *so far removed therefrom* as to render it impossible for him to be the guilty party." *Commonwealth v. Collins*, 702 A.2d 540, 545 (Pa. 1997) (emphasis added). If, however, the alibi places a defendant within the area of the crime, such that it is not impossible for the defendant to have committed the crime, an alibi instruction is not required. *Id.* (holding no alibi instruction was necessary when defendant claimed he left the area just prior to commission of the crime). Stevens testified that at the time of the incident he was on Pierce Drive in the Tasker Project, a mere couple blocks from Squire's Pharmacy. He explained Thomas and Diaz ran up to him and Diaz gave Stevens his gun for safekeeping. Stevens's close proximity to the crime and his alleged interactions with his co-defendant and Diaz immediately following the crime render any alibi instruction unnecessary. Consequently, Stevens's counsel's failure to request such an instruction was neither unreasonable nor prejudicial to Stevens, and therefore this Court overrules this objection.

---

[7] As with Stevens's fifth objection, this objection may be procedurally defaulted. The Superior Court again found this claim had been "abandoned" and, therefore, did not address its merits. Super. Ct. Op. at 3. Magistrate Judge Strawbridge concluded Stevens had raised this claim before the Superior Court because he mentioned it in his brief to the Superior Court, and the claim was thus not procedurally defaulted. Report at 31. Because Stevens failed to provide legal argument in support of this claim in his Superior Court brief, however, this Court finds Stevens did not "fairly present" the claim and, as a result, the claim is procedurally defaulted. *See Corredor*, 2010 WL 391413, at *3 ("The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition." (internal citations omitted)).

The final two objections raised by Stevens are procedurally defaulted. In his seventh objection, Stevens asserts his counsel unreasonably failed to move to sever his trial from his co-defendant's trial. Pet'r's Objections § III.G. Stevens failed to raise this claim before the Superior Court for consideration at any time, and the claim is absent from Stevens's briefs to that court. Moreover, Stevens has demonstrated neither "cause" nor a "fundamental miscarriage of justice" to overcome this procedural bar. Stevens argues that at trial, Combs identified Stevens even though she did not pick him out in a pre-trial line-up, instead identifying Thomas. Regardless, Combs testified she saw both Thomas and Stevens immediately following the robbery and again, later, by a dumpster. Thus the decision made by Stevens's attorney not to move to sever the trial did not prejudice Stevens or result in a fundamental miscarriage of justice because Combs would have testified to the same information even if Stevens had been tried separately, and other witnesses corroborated Combs's testimony. As a result, Stevens's ineffective assistance claim based on counsel's failure to move to sever the trial is without merit in addition to being barred from federal habeas review. Therefore, his objection is overruled.

In the eighth and final objection raised by Stevens, Stevens argues his counsel was ineffective for failing to object when Thomas's counsel used Stevens's name, rather than the phrase "the other person", when discussing Thomas's (redacted) statement during counsel's closing argument, in violation of Stevens's constitutional rights. Pet'r's Objections § IV. Although Stevens initially raised this claim in his brief to the PCRA court, he subsequently abandoned it following the denial of his petition in the PCRA court by failing to raise it in the Superior Court or in his habeas petition. Local Rule of Civil Procedure 72.1 provides, "[a]ll issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be

12

raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." E.D. Pa. Local R. Civ. P. 72.1.IV©.  The interest of justice does not require this new issue to be raised here.  Consequently, this objection is procedurally defaulted and not reviewable by this Court.  Therefore, this Court overrules this final objection.

In summary, the eight objections raised by Stevens lack merit or are procedurally defaulted. Accordingly, since this Court finds no clear error or manifest injustice in Magistrate Judge Strawbridge's Report and Recommendation, the Court will overrule Stevens's objections and adopt the Report.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, J.